Hachicho v. Barr is being argued first, and I think the Petitioner's Council is Carlo Brooks. Yes, thank you, Your Honor. Okay, and Mr. Meyer, is Mr. Meyer on the line, too? Yes, Your Honor. Great, so everyone can hear, I think we can proceed. This case was set for 15 minutes per side, but because of the obvious extra burdens of the remote setup, I'm going to give each counsel a couple of extra minutes if they need it. So we'll proceed to Mr. Brooks, and I'd ask Blanca to add two minutes to his time there. Okay, Judge. And then, Mr. Brooks, if you wish to make a rebuttal argument, please stop before the time runs down completely and save some time for rebuttal. All right, understood, Your Honor. Okay, so please proceed. Good morning. May it please the Court, Carlo Brooks for Petitioner Ammar Hachicho. The Petitioner's arguments are set forth in the briefing, and I don't intend to add to those arguments today. Mr. Brooks, let me ask at the outset, what's the Petitioner's position on whether this was a particularly serious crime? I'm not asking what your position on whether or not the BIA properly considered the frontescue factors. We'll get to that in a moment. But at the outset, what's your position on whether it's a particularly serious crime? Thank you, Your Honor. Interestingly, that was actually an issue that I wasn't planning to dedicate a lot of time to today just under the circumstances. But just because the agency has given such a wide latitude with respect to a particularly serious crime, and there's so many other more obvious issues in this case that will allow it to be remanded, I would just say that with respect to a particularly serious crime, what troubles me in this case, along with the other issues, is that I believe that the crime is the elephant in the room in this case. I do believe that the IJs and the boards' reasoning in this case was outcome determinative. It's hard for me to conceive that you would have decisions like these without this crime. On the other hand, it's important to note that this is Petitioner's only conviction. We have a novel situation where the victim was a family member and where the family implored the court to let it and the criminal justice system deal with this and not the immigration court. And yet, that hasn't happened at all in this case. In fact, Petitioner is now going on three years of detention in the Adelanto detention facility. He has two small children and a U.S. citizen wife. Whether his crime knocks him out of the running for asylum, I think that today I'd rather discuss his eligibility to adjust status. Even if he's not eligible for asylum, torture convention, given that he's a Christian from Syria. Well, let me interrupt again. I'm sorry you didn't want to talk at length about a particularly serious crime. But obviously, we have to consider the facts of the case. That's what we do, as well as the law. There are a lot of equitable factors and you've pointed them out. He has a U.S. citizen wife. This is his only encounter with the criminal justice system in a number of years. I'm not sure how far that gets you. But yes, he's been in immigration custody. Not a pleasant experience since 2017. Those are all equitable factors. But I'm trying to see where you stand on particularly serious crime and you've given me your answer. If we're going to move just for a moment, assuming he can't adjust his status, and I'll pass that by, you can come back to it. I don't mean to dominate the questioning. But assume we can't do that and it's a particularly serious crime, then it's only the Convention Against Torture that possibly provides relief for him. Am I correct on that? Yes, you're right. Why don't you make your argument on Convention Against Torture, please. Sure. So in this case, Petitioner presented a form I-589 which covers asylum, withholding, and Convention Against Torture. The immigration judge found him ineligible for asylum and withholding based on the particularly serious crime determination and then moved on to TAT, meaning technically this would be deferral of removal under the TAT. In this case, the IJ, preceded as though Mr. Hachicho's claims were cabined to persecution on account of his being a Christian in Syria, then cited several recent current events showing that ISIS was receding in Syria. The attorney at the individual hearing brought to the IJ's attention that the claim was actually not cabined to status as a Christian in Syria, that there was evidence that the Assad regime itself was creating a probability of torture and death. For Jules Lacacci, that as a quote-unquote opinion piece, even though it was an article from The Hill, which is a much-cited publication in Washington, D.C., and then the board sort of went on to agree with the immigration judge and stated that really the other evidence of probability of torture wasn't really before the court and that this is sort of inexplicable, that it couldn't really look into the additional evidence that the petitioner submitted with his BIA appeal. Now there's a volume of case law, all cited in the brief, that says the torture convention casts a wide evidentiary net, that it's not limited to a protected ground, that the BIA must consider changed country conditions. None of this happened. And then on appeal, the respondent has made quasi-exhaustion arguments, which also don't work so well for CAT, given its expansive nature. Counsel, can I ask a specific question? I think the regs say that all the circumstances have to be considered. The BIA decided that the circumstance, the granting of the TSP, didn't make it more likely that there was going to be torture, widespread torture. And I think said that under petitioner's theory, that really anybody returning to the country would be entitled to CAT. If you could really address specifically, given that there's a regulation that requires consideration of all circumstances, how is it then that this particular TSP is factored in? I understand your client didn't receive TSP status, but we're talking about the fact that TSP status and this particular status was afforded. We are referring to temporary protected status. Is that correct? I'm sorry? Yes, I'm talking about temporary. I'm sorry. I'm talking about temporary. I just wanted to make sure I was understanding whether your Honor was referring to TPS or not. Oh, did I? If I misspoke, I'm sorry. I'm referring to temporary protected status. I'm referring to the BIA's decision that that was not relevant, although they didn't use that word. That's my word. Their reasoning was that it was the fact that temporary protected status had been extended didn't make it more likely that your client would suffer from torture. Could you please speak to that point? Yes, and so just to be clear, your Honor's characterization of Petitioner's argument is more similar to the way that it has been expressed. The argument was never simply when a country is designated for TPS or when TPS is extended that everybody who might be returned to that country is entitled to CAT. I suppose that argument could be made. Counsel, I understand what your argument is not, but really getting back to Jud Stein's question, if you could tell us what your argument is, how should temporary protected status designation have been considered here? That's what I really need, please. Okay, so it's not the designation in and of itself that is important here, although it certainly is a persuasive factor. It is the findings that were made in order to extend TPS for Syria, or findings made by our own government, which are very similar to the findings that anybody could find on the Department of State website right now, describing the particularly egregious country conditions in Syria. Now, those conditions in and of themselves should give anybody pause. However, in this particular case, they were interesting in as much as some of the same findings and statistics that were used in order to justify the extension of TPS were also present in the record evidence and brought to the immigration judges and the board's attention in this case. And these are the findings and statistics showing that the Assad regime was barrel bombing Christian regions of the country and things of these natures. And so I think here the board sort of went a bit quickly in, you know, reducing that evidence to a sort of, you know, a TPS argument. That wasn't really the argument. If that was our petitioner's argument, then you would have filed an application for TPS. So I'm understanding your argument to be that there's a lot of reasons that temper protected status can be designated. But in this particular case, the reports you're referring to really justify that extension because of human rights violations. And so what I'm asking you very specifically is, why was the board wrong when it ruled that that designation didn't make it more likely that your client would suffer torture? It was wrong in two respects, really. It was wrong because this court, and the cases are cited in the brief, cases like WACRI, if I'm pronouncing that correctly, instructs the agency to not limit itself to one particular source of evidence. Certainly a designation of TPS with underlying findings is persuasive, probative new evidence that can't be dismissed as an attempt to make a TPS application. And then secondly, here, the findings dovetail with the evidence that was submitted in the immigration court. And so really militates against the immigration judge's dismissal of that aspect of the petitioner's claim as based on a quote-unquote opinion piece. If that article from the Hill and the statistics that it was based on is an opinion piece, then arguably U.S. policy is an opinion piece. Counsel, Judge Gould, if I could interject a question here. Yes, Your Honor. What I'd like to know is this. We all know from evidence in the record and news reports that we can't help but see in the evenings that the Assad regime has sometimes been using barrel bombs and nerve gas or other chemical weapons against civilian population in areas that were rebel-held areas. So is there any evidence that Mr. Hachicho lives in one of those areas where rebel groups were active that would make him more likely to be targeted? Yes, Your Honor. In fact, the evidence that was submitted in the immigration court included details of the impact of the war specifically on the Christian population. I don't know whether I can point off the top of my head to a particular barrel bombing that destroyed Mr. Hachicho's village, but certainly the incidents that were reported were close. In fact, the area that he's from, Deir al-Azour, has been on the news in recent times. Judge Gould, with your permission, may I ask one question? Certainly, you may. In fact, you and Judge Grissom may ask as many as you like. Although we've run Mr. Brooks' time down, we'll let him respond to any questions. I do want to address eligibility to adjust status. Let me ask my question. I want to get to the Frantescu issue. I believe your argument is that the requirements of Frantescu that in order to find something as a particularly serious crime, there are certain factors the court has to look at. Those are set forth by the Ninth Circuit in Flores-Vega. Those are the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed. I believe your argument is that was not considered by the BIA. Given the fact that the BIA said in its opinion that the immigration judge concluded, after considering the nature of the conviction, the underlying facts and circumstances, the sentence imposed and whether the circumstance indicated that the respondent will be a danger to the community, the immigration judge concluded that the respondent had sustained a conviction for a particularly serious crime. Given that, if you would make your best argument for why the Frantescu factors, particularly the sentence imposed, was not considered by the BIA. Sure, I can do that. I would like to address eligibility to adjust status as well because he definitely is eligible to adjust status. Mr. Brooks, if you would answer my question, Mr. Brooks. Yes. With respect to the Frantescu factors and the sentence imposed, and this is an issue in immigration law in general, Mr. Hachicho was convicted of a state law crime, not a federal crime. And so it's important to understand how a state, California in this instance, decides to punish somebody based on the seriousness of their conviction. The particular statute under which he was convicted is what's called a wobbler under California law. That means it can be charged and sentenced either as a felony or a misdemeanor, right? So in this particular instance, it's significant that Mr. Hachicho was sentenced to 232 days in jail. That's not a felony sentencing. As I pointed out in the brief, that would actually be a class B misdemeanor under the federal sentencing guidelines. So it is important for the agency to look at the state law framework, to understand the punishment that the individual received, and to not sort of jump to the conclusion that something is particularly serious based on a handful of facts that were adduced in the immigration court, which is not a criminal court. Okay, counsel, Judge Gould interjecting. If Judge Steiner has follow-up questions, he'll be able to ask those. But I have one simple question. Whether there's any precedent in the Ninth Circuit that says a misdemeanor cannot be a particularly serious crime? That would be nice. I would be surprised if that were the case. Well, the reason I ask is that in other cases that I've seen, I've never seen the suggestion that something sentenced as a misdemeanor cannot still be a PSC. I believe that's correct, Your Honor. Judge Gould, I just have one follow-up question. May I ask it? Sure. Counsel, I'm looking at the Francescu factors, the nature of the conviction and the circumstances and facts of the case. And the IJ here made several references to the police report. The sentence in the police report that appears at page 309 in the record says that the suspect, your client, pulled the victim out of bed and began punching her in the face approximately ten times with a closed fist. The suspect stomped on the victim's face twice with his bare feet, causing the victim to lose consciousness. So in other words, it strikes me as a very serious crime. And it does mention in here in the IJ noted that your client had been diagnosed with bipolar disorder. One of the Francescu factors is whether he'll be a danger in the future. And given those facts and circumstances, just wondering, do we have anything else in the record about whether your client has a history of, it looks like they gave him lithium after this arrest. Does he have a history of taking prescription drugs or complying with his prescriptions? I'm actually not aware of any sort of official diagnosis for Mr. Pachito. So I just want to note, counsel, we're way over time. I'm just asking a very specific question. Please, if I may interrupt and forgive me for doing so. But my very specific question is whether there's anything in the record that indicates that your client has complied with a mental health medication regime. Do we have that? I don't know. All I can tell you is that that would have been addressed in his probation and in the protective order in the criminal sphere. Thank you. Okay. We're now, we're seven minutes over the extended time. So nine minutes beyond what we initially scheduled this for. But I wanted to know if Judge Stein had any follow-up questions. No, I'm fine. And thank you, Judge Gould, for allowing me to ask that. Okay. Then I think we need to conclude Petitioner's argument now. And even though we're way over time, for planning purposes, we will let Petitioner have one minute of rebuttal, but one minute only. Okay. So now let's proceed to the Respondent William Barr's position being presented by Mr. Meyer. Excuse me. Jeffrey Meyer for the response, Your Honor. May it please the Court. First, I'd like to thank the Court and the Court staff for allowing the accommodation of the telephonic appearance during the rebuttal. Thank you. Petitioner's challenge to the agency's denial of his applications for relief lacked merit. First, the statute in the circuit precedent dictates that a K-1 visa holder who comes to the United States, such as Khachichou, is asked for an adjustment on any basis at all other than the marriage of the K-1 petitioner. According to Khachichou's claim that he should be entitled to adjust status based on a second marriage, who is not the K-1 petitioner, has to be rejected. The language of the statute itself is not ambiguous and requires beneficiaries of the K-1 visa from adjusting status on the basis other than marriage to the petitioner's sponsor. The statute makes no distinction between those aliens who get married and later have their conditional status terminated and those who fail to marry altogether. Second, the Court's jurisdiction to remove the ultimate determination that Khachichou committed a particular serious crime is limited to whether the Board applied the correct legal standard under an abuse of discretion standard. The Board properly exercises broad discretion in determining if the petitioner is convicted of a serious crime. Counsel, let me ask. What's the evidence that the BIA considered the sentence when it was applying the Frantescu factors? I believe it appears right on page 4 when the Board discusses the factors. It says that it considered the sentence imposed on page 4. In other words, is it the sentence I read to Mr. Brooks? Is that what you're referring me to? I think so, Your Honor. In the first full paragraph on the record, page 4, and that's the Board decision, page 2, it says that it considered the sentence imposed and the nature of the conviction. And all that, I would argue, all that is doing is saying that the IJ considered the sentence imposed, but isn't talking about, I don't think in the BIA's opinion there's anything about the sentence, unless I'm wrong. You mean as far as enumerating each individual fact? No, I'm not talking about the underlying crime. I'm talking about the fact that the sentence was, one would argue, light, that is time served and suspension of supervised release. I think what the Board is saying is that he properly weighed those factors. All right, thank you. Counsel, on that point, I think I have a related question. The last, are you referring to the last sentence in the paragraph? For all the reasons noted by the immigration judge, we agree the respondent's crime was particularly serious. Are you referring to that or is there another place where they discuss the factors individually? I think that sentence plus the second sentence where they say, for instance, in this regard, the immigration judge observed that there was evidence that the respondent violently attacked. I see. Okay, so go ahead, sorry. No, I just, you know, as far as the resuscitation of the 232-day sentence, that's not there. But it's obviously that they're saying, yeah, consider it a proper factor. All right. Go ahead. You were going to ask me another question? No, I think you've answered it. It's fine. Counsel, Judge Gould, I have a question for you. I'd like to hear the government's perspective or knowledge on the same question I asked the petitioners. Counsel, is there any Ninth Circuit precedent on whether a misdemeanor can be a particularly serious crime? Even in a case where it's sentenced as misdemeanor, the guy's time served was about two-thirds of a year, but not a full year. Is there any precedent that we have on that issue? I can't cite you a case other than to point out that, you know, if he's convicted of an aggravated felony or sentenced to a five-year term up in prison, then that's, you know, an automatic finding. And so anything lesser involves the factors. So maybe by implication, yeah, it could be a non-felony. But I'm not aware of a case I can cite to you, unfortunately. Okay. So as far as you're aware, Supreme Court precedent and Ninth Circuit precedent don't preclude a misdemeanor being considered a PSC. Yes, Your Honor. Okay, thank you. You're welcome. Are there any additional questions the court would like me to address? Well, yes, at least Judge Gould, speaking for myself, I'd say assuming that you're correct that he can't adjust status because he came in on the K-1, and assuming you are correct that it is a PSC when he beat his mother-in-law, what about the cat issue? Because there's a vigorous argument made that he's entitled to cat relief insofar as the BIA did not assess persecution by the Assad regime. Well, I think what was presented to the immigration judge was that he would be tortured by ISIS because he was a Christian. And so the court points out that the immigration judge addressed that, but it wasn't requiring a nexus to be enumerated. In other words, it wasn't because he was a Christian, it was just that claim. For cat relief, for counsel, is Judge Gould interjecting? And sorry to interrupt, but for cat relief, there's no nexus requirement. There's just a requirement of a probability of torture. But the argument is being made by petitioner that there's a probability of torture from the Assad regime as opposed to torture from ISIS that wasn't addressed. Well, the court was saying it's not before it because it wasn't presented to the immigration judge. But as we pointed out in the repurposed stat, there's portions of Syria not controlled by ISIS and rebel forces, and there's no indication that a teacher could not relocate to one of those areas. And, you know, it's a civil war area and we understand that, but that doesn't mean he's going to be targeted or tortured by the Assad regime. Okay, but counsel, the question I'm asking is this. Whether it's likely or not likely, the BI did not address at all the issue of torture by the Assad regime, as I understood the record. But if that's so, if that is so, then why shouldn't we grant the petition and remand for the court to consider or for the BI to consider deferral of removal under cat? It looks to me like in the last paragraph of the board's decision, they do address that. And that he wouldn't be targeted by the Syrian government because of the ongoing civil war. So they did look at his exhibits, even though he didn't present them to the immigration judge. But counsel, look at the, in that paragraph, it says in light of the totality of the circumstances of the instant case, we conclude that new evidence that the TPS has been extended in Syria is not material to respondents' claims, such that remand would be warranted since that determination, excuse me, since a determination does not tend to show that widespread torture is occurring. And it struck me, this struck me as a curious sentence, because as you know, TPS is extended for many reasons. Sometimes there's a flood, sometimes there's a hurricane. But in this circumstance, I think the record is quite clear, it was extended because of widespread human rights violations by the Assad regime. So how is it possible that this particular designation is immaterial in the words of the BIA? Yeah, I think that Laura's pointing out a couple things there. And one is that, you know, there's no evidence that he was ever granted it. So it's a bit of a red herring. And two, that, you know, as you point out, TPS, you know, is there for a number of reasons, including, in this case, probably it's just, you know, the circumstances in a civil war. But that doesn't suggest that Khadiju himself would be targeted for torture by the Assad regime. But that gets into Judge Gould's other question about whether he could relocate, whether the nature of this situation is so fluid that it's not possible to relocate. I guess my only point is we ought not reach that in the first instance. And I think Judge Gould's question went to, hey, if this wasn't considered, why shouldn't we remand for consideration of this circumstance? Well, in a sense, you know, we're bound by the administrative record here. And so in these cases, it's always a bit of a moving target. So, you know, the board can only consider and the immigration judge can only consider the record presented to it. And for us to now say, you know, new evidence or changing circumstances that weren't before the board, it's hard to say that the board's decision is incorrect. Well, but that really, excuse me, forgive me for interrupting. I think that's a precisely Judge Gould's question. If this is new evidence, should we remand for consideration of this evidence? Like new evidence that couldn't have been offered earlier. Could you speak to that, please? Well, the mechanism for that would be a motion to reopen and present new evidence to the agency. Let me ask a legal question, sir. As a matter of law, when does the time stop in terms of our considering changed country circumstances? Does it stop at the closure of the record before the IJ? Or is it still alive for consideration by the BIA and the Ninth Circuit? I believe it stops when the immigration judge makes its decision. And that's the nature of, that's why we have an administrative record. It's not for us to be on the petition for review and introducing new evidence. We, how can we judge the immigration judge's decision based on evidence that wasn't before? So, yeah, it stops at the end of the. But Judge Gould, to follow up on a question Judge Christen asked, if the agency, responsible agency said, we're not going to consider that new evidence because it's not relevant or not material. And if that is an error of law, then should we not grant the petition and say that and ask them to consider the evidence? Or consider the request to add the new evidence? I think if he has new evidence, he needs to make a motion to reopen. OK, thank you. OK, you're off. You're off. Anything further for the respondent? No, not from any of us. Thank you, Your Honor. And again, thank you for allowing us to appear telephonically. Yes, thank you. And thanks for your flexibility in permitting this argument to go forward remotely. My pleasure, Your Honor. We were going to give Mr. DiCiccio's counsel, Carlo Cooks, one minute. Yes, thank you, Your Honor. If you want to rebuttal, but now please stop after one minute. Understood, Your Honor. Thank you, Your Honor. Very quickly, with respect to these issues of exhaustion, so to speak, counsel's interpretation is simply incorrect. The regulations themselves state that the board may remand where further fact-finding is necessary. That's 8 CFR 1003.1B34. Secondly, an issue that we haven't talked a lot about and which to me was the main issue in this case, given that it's the path of least resistance, Mr. DiCiccio is absolutely eligible to adjust status. This has been a colossal delay in his case, this strange position of the government. He can't adjust his status. Counsel Judge Gould, I'm afraid your extra minute is concluded. I don't want to be exactly like former Chief Justice Rehnquist, who was probably before your time, who used to end arguments just by saying time's up. That was it. But let me ask if the other judges have questions on adjustment of status. I'm fine, thank you. I do not. Okay, none of us have further questions. So I think we will thank Mr. Brooks for petitioner's argument. We'll thank Mr. Meyer for the government's response. And the DiCiccio versus Barr case shall now be submitted. We'll go on to the other. Thank you, Your Honor.
judges: Gould, Christen, Stein